1

2

3      *E-FILED*

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

11   CURTIS LEE HENDERSON, SR.,          )    No. C 11-4918 RMW (PR)
                                         )
12              Plaintiff,               )    ORDER GRANTING
                                         )    DEFENDANT'S MOTION FOR
13        v.                             )    SUMMARY JUDGMENT
                                         )
14   DR. J. ESPINOZA, et al.,            )
                                         )    (Docket No. 29)
15              Defendants.              )
     _____)

16

17         Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42

18   U.S.C. § 1983.  He alleges that defendant Drs. Espinoza, Shampain, and Yu were deliberately

19   indifferent to his serious medical needs, in violation of the Eighth Amendment.  Defendant Dr.

20   Espinoza ("Dr. Espinoza") has moved for summary judgment, arguing that there is no genuine

21   issue of material fact and that she is entitled to judgment as a matter of law.  Plaintiff has filed

22   both an opposition and supplemental opposition, and Dr. Espinoza has filed a reply.  Dr.

23   Espinoza has also filed a request for judicial notice, which is GRANTED.  Having carefully

24   considered the papers submitted, the court hereby GRANTS Dr. Espinoza's motion for summary

25   judgment, for the reasons set out below.

                                    **BACKGROUND**

26         The following facts are undisputed unless otherwise indicated.

27         On May 11, 2011, plaintiff was assaulted and suffered serious injuries.  (Compl. at 4.)

28

Order Granting Defendant Dr. Espinoza's Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Henderson918msj.wpd

1  He was diagnosed with a fractured right clavicle and a facial fracture. (Decl. Espinoza at ¶ 4,

2  Ex. A at 2.) Plaintiff had surgery to treat his facial fracture, which required the use of two plates

3  and approximately ten screws, plus the removal of several upper teeth. (Compl. at 4.) Plaintiff

4  was prescribed a Figure-8 brace and pain medication. (Decl. Espinoza, Ex. A at 5.)

5  On June 6, 2011, plaintiff was prescribed a soft-food diet for two to three weeks. (Decl.

6  Espinoza, Ex. A at 4.) On July 12, 2011, plaintiff was prescribed a liquid-nutrition supplement

7  three times a day until July 31, 2011. (Id. at 4.)

8  On July 18, 2011, plaintiff sought dental and medical care, but was denied. (Compl. at

9  4.) Similarly, on July 26 and 27, 2011, plaintiff sought medical care, and was denied. (Id.)

10  Finally, on July 29, 2011, plaintiff was seen by Dr. Espinoza, a doctor at San Quentin State

11  Prison. (Id.; Decl. Espinoza at ¶ 1.) Plaintiff explained to her that he was in severe pain from his

12  facial fracture and his broken clavicle. (Compl. at 5.) Dr. Espinoza reviewed plaintiff's medical

13  file and x-rays of plaintiff's facial fracture and broken clavicle. (Id.; Decl. Espinoza at ¶ 3.)

14  Plaintiff requested that Dr. Espinoza renew the prescriptions for a soft-food diet and

15  liquid-nutrition supplement. (Compl. at 5.) Plaintiff alleges that Dr. Espinoza told him that she

16  could not issue those items because the health care policies are very strict. (Id.) Plaintiff also

17  requested that the bone in his clavicle be re-set because the pain was getting worse. (Id.)

18  Plaintiff further requested morphine, an ice chrono for his face, and a sling for his arm. (Id.)

19  Plaintiff alleges that Dr. Espinoza denied both the ice chrono and the sling, but prescribed him

20  Tylenol and indomethacin for pain. (Id.) Plaintiff had to make a sling out of a sheet as an

21  alternative. (Id.)

22  According to Dr. Espinoza, she did not renew plaintiff's prescriptions for a soft-food diet

23  or liquid-nutrition supplement because, in general, patients with a jaw fracture such as plaintiff's

24  usually only receive such prescriptions for a few weeks, and it had been two months since

25  plaintiff incurred his injury. (Decl. Espinoza at ¶ 6.) Dr. Espinoza did not believe there was any

26  medical reason why plaintiff would still need to receive those prescriptions. (Id. and Ex. A at 6.)

27  She believed that it was more appropriate for plaintiff's dentist to determine whether those

28

1    prescriptions were necessary and opted to wait for the dentist's recommendations.  (Decl.

2    Espinoza at ¶ 6 and Ex. A at 6.)  Regarding plaintiff's request for pain medication, because

3    plaintiff was not on any pain medication when Dr. Espinoza saw him, she prescribed

4    indomethacin, an anti-inflammatory drug, and Tylenol.  (Decl. Espinzoa at ¶ 7.)  The standard of

5    care for chronic pain management is to first prescribe "first-line medications" rather than

6    narcotics.  (Id.)  In addition, it was not clear to Dr. Espinoza that plaintiff's medical condition

7    regarding his clavicle warranted a narcotic drug because "clavicular fractures do not typically

8    require long-term narcotic pain medications."  (Id.)  Although Dr. Espinoza did not believe a

9    sling was medically indicated, she prescribed a sling for two months and referred plaintiff to an

10   orthopedic surgeon for advice on whether the sling was medically necessary.  (Id. at ¶ 8.)

11           Dr. Espinoza scheduled plaintiff for a follow-up in thirty days.  (Decl. Espinoza at ¶ 9.)

12   However, in mid-August 2011, plaintiff was transferred out of SQSP.  (Decl. Espinoza, Ex. A at

13   12.)

14                                      **DISCUSSION**

15           In his federal complaint, plaintiff alleges that, on July 29, 2011, Dr. Espinoza refused to

16   properly treat his broken clavicle and facial fracture.  Dr. Espinoza argues that she provided

17   appropriate medical care.

18   A.      Standard of Review

19           Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

20   that there is "no genuine issue as to any material fact and that the moving party is entitled to

21   judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

22   the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute

23   as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

24   verdict for the nonmoving party.  Id.

25           The party moving for summary judgment bears the initial burden of identifying those

26   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

27   issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving

28

Order Granting Defendant Dr. Espinoza's Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Henderson918msj.wpd

1   party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

2   reasonable trier of fact could find other than for the moving party.  But on an issue for which the

3   opposing party will have the burden of proof at trial, as is the case here, the moving party need

4   only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

5   at 325.

6          Once the moving party meets its initial burden, the nonmoving party must go beyond the

7   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

8   genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

9   material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

10  Liberty Lobby, Inc., 477 U.S. at 248 (1986).  It is not the task of the court to scour the record in

11  search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).

12  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence

13  that precludes summary judgment. Id.  If the nonmoving party fails to make this showing, "the

14  moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

15         At the summary judgment stage, the court must view the evidence in the light most

16  favorable to the nonmoving party: if evidence produced by the moving party conflicts with

17  evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

18  forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152,

19  1158 (9th Cir. 1999).

20  B.     Law

21         A determination of "deliberate indifference to serious medical needs" involves an

22  examination of two elements: the seriousness of the prisoner's medical need and the nature of the

23  defendants' response to that need.  See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),

24  overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.

25  1997) (en banc).  A prison official is deliberately indifferent if he knows that a prisoner faces a

26  substantial risk of serious harm and disregards that risk by failing to take reasonable steps to

27  abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be

28

Order Granting Defendant Dr. Espinoza's Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Henderson918msj.wpd

1   aware of facts from which the inference could be drawn that a substantial risk of serious harm

2   exists," but he "must also draw the inference." Id. If a prison official should have been aware of

3   the risk, but was not, then the official has not violated the Eighth Amendment, no matter how

4   severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

5   C.     Analysis

6          There is no genuine issue of material fact as to whether Dr. Espinoza was deliberately

7   indifferent to plaintiff's medical needs. On July 29, 2011, she examined him and recognized his

8   previous diagnoses of a facial and right clavicle fracture. (Decl. Espinoza at ¶ 4, Ex. A at 6.)

9   She noted that plaintiff was requesting several unspecified chronos, Tylenol with codeine,[1] and a

10  soft diet. (Decl. Espinoza at ¶ 5, Ex. A at 6.) Dr. Espinoza rejected the above items. Because

11  plaintiff was not currently on any pain medications, the standard of medical care called for

12  first-line medications rather than narcotics, and thus Dr. Espinoza prescribed Tylenol and

13  indomethacin. (Decl. Espinoza at ¶ 7.) In addition, because patients with a jaw fracture

14  normally were prescribed a soft-food diet or liquid-nutrition supplement for a few weeks after

15  the initial injury, and plaintiff had been injured two months prior, Dr. Espinoza did not believe

16  they were medically necessary. (Id. at ¶ 6.) Instead, Dr. Espinoza deferred the decision to

17  plaintiff's dentist to determine whether such items were medically necessary. (Id.) Finally, even

18  though Dr. Espinoza did not believe a sling was medically necessary at the time, she prescribed

19  one for two months and referred plaintiff to an orthopedic surgeon to follow up. (Id. at ¶ 8.)

20         "A difference of opinion between a prisoner-patient and prison medical authorities

21  regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337,

22  1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion

23  as to the need to pursue one course of treatment over another is insufficient, as a matter of law,

24  to establish deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir.

25  2004). In order to prevail on a claim involving choices between alternative courses of treatment,

26

27         [1] Plaintiff claims that he requested morphine, and does not suggest that he wanted Tylenol
28  with codeine. This disputed fact is not material to the analysis.

1 a plaintiff must show that the course of treatment the doctor chose was medically unacceptable

2 under the circumstances and that she chose this course in conscious disregard of an excessive

3 risk to plaintiff's health. Id. at 1058.

4       At most here, plaintiff has a difference of opinion as to whether Dr. Espinoza should have

5 ordered renewed his prescriptions for a soft-food diet or liquid-nutrition supplement, and

6 whether she should have prescribed narcotic pain medication.  Further, he has provided nothing

7 to suggest that Dr. Espinoza's avenue of treatment was medically unacceptable under the

8 circumstances, or that she chose those methods of treatment in conscious disregard to plaintiff's

9 health.  See id.  Moreover, plaintiff notes that he received a sling on August 16, 2011.  (Opp. at

10 7.)  Plaintiff appears to be specifically complaining that Dr. Espinoza did not give him a sling on

11 the date of his appointment, and does not suggest that Dr. Espinoza failed to order him a sling.

12 That Dr. Espinoza ordered plaintiff a sling, but did not have a sling on hand does not

13 demonstrate that she knew plaintiff faced a substantial risk of serious harm and disregarded it by

14 failing to take reasonable steps.  See Farmer, 511 U.S. at 837.  Moreover, Dr. Espinoza did not

15 believe that a sling was medically necessary considering plaintiff's condition.  (Decl. Espinoza at

16 ¶ 8.)  There is an absence of evidence that Dr. Espinoza purposefully failed to fact, or that

17 plaintiff suffered a resulting harm from the time Dr. Espinoza ordered the sling until three weeks

18 later, when plaintiff received one.  See McGuckin, 974 F.2d at 1060.

19       In addition, the evidence is undisputed that July 29, 2011 is the only encounter that

20 plaintiff ever had with Dr. Espinoza.  Although Dr. Espinoza does not discuss plaintiff's

21 allegation that he also requested an ice chrono, at most, the evidence shows that Dr. Espinoza's

22 actions and medical decisions were negligent, and thus, not sufficient to sustain an allegation of

23 deliberate indifference.  See O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly

24 failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not

25 constitutional violation; isolated occurrences of neglect may constitute grounds for medical

26 malpractice but do not rise to level of unnecessary and wanton infliction of pain).

27       To the extent plaintiff is complaining that Dr. Espinoza refused to see or treat him, there

28

Order Granting Defendant Dr. Espinoza's Motion for Summary Judgment
G:\PRO-SE\SJ.Rmw\CR.11\Henderson918msj.wpd

1   is an absence of evidence to support his claim.  Plaintiff has not demonstrated that there is a

2   material issue of disputed fact as to whether Dr. Espinoza exhibited deliberate indifference.

3   According to plaintiff, on July 15 and 26, 2011, plaintiff was granted leave for a nurse visit.  (Pl.

4   Opp., Exs. D & E.)  Although plaintiff asserts that on some unknown date, he had requested to

5   see Dr. Espinoza and she refused to see him, he provides no support for his statement, and thus it

6   is insufficient to establish a genuine issue of material fact.  See Rodriguez v. Airborne Express,

7   265 F.3d 890, 902 (9th Cir. 2001); see also Thornton v. City of St. Helens, 425 F.3d 1158, 1167

8   (9th Cir. 2005) (in equal protection case, conclusory statement of bias to sufficient to carry

9   nonmoving party's burden).  Plaintiff also claims that he was granted leave to see a doctor on

10  July 27, 2011.  (Pl. Opp., Ex. E.)  Despite the fact that plaintiff was in trial on that day and not at

11  the prison (Req. Judicial Notice, Ex. B), even assuming that Dr. Espinoza knew that plaintiff was

12  requesting medical treatment, nowhere in his pleadings does plaintiff assert that Dr. Espinoza

13  knew about, or even had reason to know about, plaintiff's medical condition or concerns.  Thus,

14  plaintiff has not shown a genuine issue of material fact about whether Dr. Espinoza knew that

15  plaintiff faced a substantial risk of harm and disregarded that risk by failing to see plaintiff.  See

16  Farmer, 511 U.S. at 837.  The law is clear that even if Dr. Espinoza should have been aware of

17  the risk, but was not, she has not violated the Eighth Amendment.  See Gibson, 290 F.3d at 1188.

18          Moreover, Dr. Espinoza saw plaintiff on July 29, 2011 – two days after he was initially

19  scheduled to see her.  Plaintiff has not shown that Dr. Espinoza knew that a two-day delay could

20  cause significant harm to plaintiff, or that she had any control over those delays.  See Hallett v.

21  Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002) (plaintiffs could not prove Eighth Amendment

22  violation in class action because they "have not demonstrated that delays occurred to patients

23  with [dental] problems so severe that delays would cause significant  harm and that defendants

24  should have known this to be the case"); Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir.

25  2002) (doctor entitled to summary judgment where plaintiff presented no evidence that delays

26  between plaintiff's initial visit, diagnosis and visit to the specialist were within the doctor's

27  control or the doctor was deliberately indifferent to the medical needs or that the delay

28

1   contributed to plaintiff's injuries).

2          For the above reasons, Dr. Espinoza is entitled to summary judgment as a matter of law.

3                                    **CONCLUSION**

4          Defendant's motion for summary judgment is GRANTED.  Judgment is entered in favor

5   of Dr. Espinoza, and she is terminated from this action.

6          IT IS SO ORDERED.

7   DATED:   _____

8                                          RONALD M. WHYTE
                                           United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Motion for Reconsideration of Preliminary Injunction; Denying in Part and Granting in Part
Plaintiff's Motion for Extension of Time
G:\PRO-SE\SJ.Rmw\CR.11\Henderson918msj.wpd        8

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


CURTIS LEE HENDERSON SR.,

               Plaintiff,

   v.

CA DEPT OF CORRECTIONS et al,

               Defendant.

_____/

Case Number: CV11-04918 RMW

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 27, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Curtis Lee Henderson H-43488
Corcoran State Prison
D1-148
P.O. Box 5242
Corcoran, CA 93212


Dated: March 27, 2013

Richard W. Wieking, Clerk
By: Jackie Lynn Garcia, Deputy Clerk